Dear Representative Robideaux:
Our office is in receipt of your opinion request regarding the responsibilities of, and immunity for, someone who sells, purchases, or owns an entity which has an Automated External Defibrillator ("AED").
Specifically, you ask:
1. Is the opinion set forth in La. Atty. Gen. Op. No. 98-272 affected in any way by the subsequent enactment of La.R.S. 40:1236.11 et seq.?
2. What are the consequences when a person or entity fails to comply with the requirements of La.R.S. 40:1236.13(A) and/or 40:1236.13(B), and will such failure result in a loss of the civil immunity provided in La.R.S. 9:2793 and/or La.R.S. 40:1236.11 et seq.?
3. What are the consequences when the owner of, or the entity responsible for, a physical fitness facility fails to keep an AED on its premises as required by La.R.S.40:1236.13(D)?
 Each issue will be addressed in turn. *Page 2 
 1. Is the opinion set forth in La. Atty. Gen. Op. No. 98-272 affectedin any way by the subsequent enactment of La.R.S. 40:1236.11 et seq.?
In Louisiana Attorney General Opinion 98-272, this office addressed whether the Louisiana's Good Samaritan laws (as set out in Louisiana Revised Statutes 9:2793, 9:2793.1, 9:2793.2; 37:1731, 37:1735; and 40:1235) provide protection from civil liability to gratuitous rescuers (including lay rescuers) who use an automated external defibrillator (an AED) to try to resuscitate someone in an emergency. The author of Opinion 98-272 found the provisions of La.R.S. 9:2793 applicable to this question. La.R.S. 9:2793 provides:
 § 2793. Gratuitous service at scene of emergency; limitation on liability
 A. No person who in good faith gratuitously renders emergency care, first aid or rescue at the scene of an emergency, or moves a person receiving such care, first aid or rescue to a hospital or other place of medical care shall be liable for any civil damages as a result of any act or omission in rendering the care or services or as a result of any act or failure to act to provide or arrange for further medical treatment or care for the person involved in the said emergency; provided, however, such care or services or transportation shall not be considered gratuitous, and this Section shall not apply when rendered incidental to a business relationship, including but not limited to that of employer-employee, existing between the person rendering such care or service or transportation and the person receiving the same, or when incidental to a business relationship existing between the employer or principal of the person rendering such care, service or transportation and the employer or principal of the person receiving such care, service or transportation. This Section shall not exempt from liability those individuals who intentionally or by grossly negligent acts or omissions cause damages to another individual.
 B. The immunity herein granted shall be personal to the individual rendering such care or service or furnishing such transportation and shall not inure to the benefit of any employer or other person legally responsible for the acts or omissions of such individual, nor shall it inure to the benefit of any insurer.
The author of Opinion 98-272 determined that, under La.R.S. 9:2793, "a gratuitous rescuer who uses an automated external defibrillator would be protected from civil liability under the general terms of LSA-R.S.9:2793 *Page 3 
Louisiana's "Good Samaritan" statute, provided the caregiver does not cause damage to another intentionally or by gross negligence and that the care is not given incidental to a business relationship." The author of Opinion 98-272 further noted that while "the statute does not specify the type of care or instruments or devices used in administering the care . . . the use of an automated external defibrillator would be one type of emergency care which would fall within the type protected by the statute".
The current provisions of La.R.S. 9:2793 remain unchanged from the time Opinion 98-272 was released. Further, legislation adopted subsequent to the release of Opinion 98-272 affording protection from civil liability to certain individuals possessing AEDs (see La.R.S. 40:1236.11, et seq., discussed below) does not address the civil liability of a gratuitous rescuer who uses an AED to try to resuscitate someone in an emergency.
Thus, our conclusion herein remains consistent with the conclusion drawn in Opinion 98-272: a gratuitous rescuer who uses an AED to try to resuscitate someone in an emergency is protected from civil liability under the general terms of La.R.S. 9:2793, provided the rescuer does not cause damage to another intentionally or by gross negligence and that the emergency care is not given incidental to a business relationship.
La. Atty. Gen. Op. No. 98-272 also addressed whether the Good Samaritan laws (or any other statutes) provided protection from civil liability to an AED prescriber, to an AED provider or acquirer, to an AED instructor, and to a premises owner who agrees to have an AED on that premises. The author of Opinion 98-272 correctly noted that no specific legislation then existed affording protection from civil liability for an AED prescriber, an AED provider or acquirer, an AED instructor, or to a premises owner who agrees to have an AED on that premises. The author of Opinion 98-272 concluded "there are many hypothetical situations that shift liability among the provider, prescriber, acquirer, instructor or premises owner depending upon the facts. These would have to be addressed on a case by case basis."
Subsequent to the release of Opinion 98-272, the legislature passed Act 825 of the 1999 Louisiana Regular Legislative Session, enacting La.R.S. 40:1236.14, which provides:
 1236.14. Limitation of liability
 In addition to the civil immunity provided to persons rendering emergency assistance as provided by law, including R.S. 9:2793, R.S. 37:1731, 1732, and 1735, and R.S. 40:1231.2, any prescribing *Page 4 
advanced practice registered nurse or physician who authorizes the purchase of the AED, any physician or advanced practice registered nurse involved in the possessor's program, any individual or entity which provides training in cardiopulmonary resuscitation and in the use of an AED, any purchaser of an AED, any person or entity responsible for the site or the private security patrol vehicle where an AED is located, and any expected user regularly on the premises or in the vehicle shall not be liable for any civil damages arising from any act or omission of acts related to the operation of or failure to operate an AED that do not amount to willful or wanton misconduct or gross negligence.
Questions concerning protection from civil liability for an AED prescriber, an AED provider or acquirer, an AED instructor, or to a premises owner who agrees to have an AED on that premises, are now governed by La.R.S. 40:1236.14. Thus, La.R.S. 40:1236.14 supercedes the conclusion drawn in Opinion 98-272 regarding the civil liability of these individuals.
Finally, La. Atty. Gen. Op. No. 98-272 addressed whether persons who own facilities where large numbers of people gather or frequent have a duty to provide AEDs (and/or similar resuscitation equipment) or other first aid equipment to persons on their premises. At the time of the opinion's release, "this office [was] not aware of any legislation that impose[d] a duty upon owners of facilities where large numbers of people gather to provide AEDs for emergency treatment of persons on their premises."
Since the release of La. Atty. Gen. Op. No. 98-272, the 2004 Regular Session of the Louisiana Legislature enacted Act 885 (HB 1584) which addresses this issue. Act 885 (2004, R.S.) enacted La.R.S. 40:1236.13
(D), (E), and (F) which state:
 D. (1) The owner of or the entity responsible for a physical fitness facility shall keep an AED on its premises.
 (2) As used in this Subsection:
 (a) "Physical fitness facility" means a facility for profit or nonprofit with a membership of over fifty persons that offers physical fitness services. This term includes but is not limited to clubs, studios, health spas, weight control centers, clinics, figure salons, tanning centers, athletic or sport clubs, and YWCA and YMCA organizations. *Page 5 
 (b) "Physical fitness services" means services for the development of physical fitness through exercise or weight control. It shall not include a business limited solely to the practice of physical therapy, as defined in R.S. 7:2401, by a therapist licensed by the Louisiana State Board of Medical Examiners, nor shall it apply to medically related services performed by a physician licensed by the Louisiana State Board of Medical Examiners in a private office, clinic, or hospital.
 E. Any institution of higher education that competes in intercollegiate athletics shall have an AED on its premises in its athletic department.
 F. The office of public health within the Department of Health and Hospitals, through its center for community health, emergency medical services shall promulgate all necessary rules and regulations to implement the provisions of Subsections D and E of this Section. Such rules and regulations shall, at a minimum, provide for compliance, enforcement, and penalties. (Emphasis added.)
Therefore, the owner of or the entity responsible for a physical fitness facility and any institution of higher education that competes in intercollegiate athletics now have a duty to provide an AED on its premises.
2. What are the consequences when a person or entity fails to complywith the requirements of La.R.S. 40:1236.13(A) and/or La.R.S.40:1236.13(B), and will such failure result in a loss of the civilimmunity provided in La.R.S. 9:2793 and/or La.R.S. 40:1236.11, et seq.?
La.R.S. 40:1236.13 sets out requirements that any person or entity possessing an AED must comply with. This statute provides in pertinent part:
 A. In order to ensure public health and safety, any person or entity that possesses an AED shall ensure that:
 (1) The AED is maintained and tested according to the manufacturer's guidelines.
 (2) A licensed physician or advanced practice registered nurse who is authorized to prescribe is involved in the possessor's program to ensure compliance with the requirements for training, emergency medical service (EMS) notification, and maintenance. *Page 6 
 (3) (a) Expected AED users regularly, on the premises of a particular entity, such as a work site or users who carry an AED in a private security patrol vehicle, receive appropriate training in cardiopulmonary resuscitation (CPR) and in the use of an AED from any nationally recognized course in CPR and AED use.
 (b) For purposes of this Paragraph, "expected AED users" shall be any person designated by the possessor to render emergency care.
 (4) The emergency medical services system is activated as soon as possible when an individual renders emergency care to an individual in cardiac arrest by using an AED.
 (5) Any clinical use of the AED is reported to the licensed physician or advanced practice registered nurse involved in the possessor's program.
 B. Any person or entity that possesses an AED shall notify the bureau of emergency medical services in the office of public health of the Department of Health and Hospitals and a local provider of emergency medical services, such as 911 service, local ambulance service, or the fire department of the acquisition, location, and type of AED.
The provisions of La.R.S. 40:1236.11, et seq. do not explicitly provide for the consequences imposed on a person or entity that fails to comply with the requirements in La.R.S. 40:1236.13(A) and/or (B), quoted above. La.R.S. 40:1236.14 only provides immunity for actions so long as they "do not amount to willful or wanton misconduct or gross negligence." Louisiana law is clear that "[w]hile statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined."[1] Thus, your second inquiry will require a case-by-case analysis of the facts and law by the courts in their role as fact finders to determine what, if any, consequences exist when a person or entity fails to comply with the duties imposed in La.R.S. 40:1236.13(A) and/or (B). *Page 7 
 3. What are the consequences when the owner of, or the entityresponsible for, a physical fitness facility fails to keep an AED on itspremises as required by La.R.S. 40:1236.13(D)?
La.R.S. 40:1236.13(F) provides "[t]he office of public health within the Department of Health and Hospitals, through its center for community health, emergency medical services shall promulgate all necessary rules and regulations to implement the provisions of Subsections D and E of this Section. Such rules and regulations shall, at a minimum, provide for compliance, enforcement, and penalties."[2]
Any consequences for failure to keep an AED on the premises of a physical fitness facility by La.R.S. 40:1236.13(D) would be determined under the rules and regulations promulgated by the Department of Health and Hospitals and published in the Louisiana Register under the Public Health section. This office searched the Louisiana Register Cumulative Index from 1999 to 2008 and found no mention of AED. However, this office spoke with David McCay with the Department of Health and Hospitals on November 3, 2008 and was advised that such rules and regulations will likely be adopted shortly.
We summarize our conclusions herein as follows: First, a gratuitous rescuer who uses an automated external defibrillator (an AED) to try to resuscitate someone in an emergency is protected from civil liability under the general terms of La.R.S. 9:2793, provided the caregiver does not cause damage to another intentionally or by gross negligence and that the care is not given incidental to a business relationship. Second, questions concerning the protection from civil liability afforded an AED prescriber, an AED provider or acquirer, an AED instructor, or to a premises owner who agrees to have an AED on that premises, are governed by the provisions of La.R.S. 40:1236.14. Third, questions concerning the consequences for noncompliance with La.R.S. 40:1236.13(A) and (B) are determined on a case-by-case basis by the courts in their role as fact finders. Fourth, pursuant to La.R.S. 40:1236.13(D), the owner of or the entity responsible for a physical fitness facility and any institution of higher education that competes in intercollegiate athletics now has a duty to provide an AED on its premises. Fifth and finally, it is the responsibility of the Department of Public Health and Hospitals to adopt rules and regulations providing consequences for the failure of a person or entity to keep an AED on the premises of a physical fitness facility as required by La.R.S. 40:1236.13(D). *Page 8 
We hope that this sufficiently answers your inquiry. However, if we may be of further assistance, please do not hesitate to contact our office.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 ATTORNEY GENERAL
 BY:__________________________
 ERIN C. DAY
 ASSISTANT ATTORNEY GENERAL
 JDC/ECD/sfj
[1] Smolinski v. Taulli, 276 So.2d 286, 289 (La. 1973). As you are aware, there is a difference in degrees of negligence. In Smolinski, the threshold determination was whether the action at issue constituted ordinary negligence. Here, the threshold requirement is whether the action at issue constitutes willful or wanton misconduct or gross negligence. Although Smolinski addresses ordinary negligence, the principle still applies to willful or wanton misconduct or gross negligence.
[2] DHH's authority to promulgate rules and regulations providing for compliance, enforcement and penalties does not apply to La.R.S.40:1236.13(A) and (B); it is limited to La.R.S. 40:1236.13(D) and (E).